Andrew Gunem (SBN 354042)
Samuel J. Strauss (to be admitted *Pro Hac Vice*)
Raina C. Borelli (to be admitted *Pro Hac Vice*)
TURKE & STRAUSS LLP
613 Williamson St., Suite 201
Madison, Wisconsin 53703-3515
Telephone: (608) 237-1775
Facsimile: (509) 4423

Benjamin R. Osborn (to be admitted *Pro Hac Vice*)
LAW OFFICE OF BENJAMIN OSBORN
63 Fiddlers Elbow Rd.
Margaretville, NY
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

*Attorneys for Plaintiff and the Proposed Class*

# THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EUGENE MANNACIO, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>INFORMATION.COM LLC, a Delaware limited liability corporation,<br><br>Defendant. | Case No. 3:24-cv-01717<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF CAL CIV. CODE § 3344; CALIFORNIA MISAPPROPRIATION OF NAME OR LIKENESS; AND CAL. BUS. & PROF. CODE § 17200 ET SEQ. ("UCL")**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

CLASS ACTION COMPLAINT

1

**NATURE OF ACTION**

2    1.    California law protects every individual's right to control the commercial use of

3  their name, persona, and identity. Cal. Civ. Code § 3344. Californians have the right to exclude

4  anyone from using their name and persona to advertise without their prior consent. *Id*. "Any

5  person who knowingly uses" a name and persona "for purposes of advertising or selling, or

6  soliciting purchases of, products . . . or services, without [Plaintiff's] prior consent," thereby

7  violates California law. *Id*.

8    2.    Defendant   Information.com   LLC   owns   and   operates   the   website

9  www.information.com. Information.com is a self-described "People Search Engine."[1] Defendant

10  trades on the public's interest in learning potentially damaging and salacious information about

11  their friends, neighbors, family, and romantic partners. Defendant provides a variety of free

12  search tools with which prospective subscribers may search for and locate an individual in whom

13  they are interested. Defendant expressly encourages prospective subscribers to search for

14  themselves and their neighbors, friends, family members, and romantic partners.

15    3.    In response to such searches, Defendant delivers limited "teaser profiles" that

16  contain information sufficient to uniquely identify the searched-for individual. However, the

17  teaser profiles represent that the user must purchase a paid monthly subscription to learn

18  additional hidden information about the searched-for individual, including home addresses,

19  phone numbers, relatives' identities, "Criminal Records," "Bankruptcies," and "Personal Assets."

20  (Direct quotes are from screenshots in this Complaint.) The teaser profiles also represent that a

21  subscription will provide unlimited access to full profiles about millions of other individuals.

22    4.    Defendant publicly admitted that its reason for publishing teaser profiles is to

23  enable prospective subscribers to verify the identity of the person they're searching for before

24  making a purchase (*see* detailed allegations below). Thus, Defendant admittedly uses the names

25  and personas in its teaser profiles for the commercial purpose of advertising subscriptions.

26

27  _____

28

[1] Quoted text appears on Defendant's landing page, available at www.information.com.

5.      Defendant also advertises that paying subscribers will receive _real-time updates_ about the targeted individual's activities, including when he or she moves addresses or commits a crime.

6.      Defendant is the sole author, designer, and implementor of the teaser profiles and advertising flows giving rise to this lawsuit. Defendant does not host user-generated content. Defendant is the sole curator, designer, and creator of the content described in this Complaint.

7.      On information and belief, Defendant obtained the personal information in its teaser profiles by paying third-party data brokers. On information and belief, Defendant's licensing contracts with data brokers purport to grant Defendant the right to make commercial use of Plaintiff's and Class members' names and personal information in the teaser profiles Defendant uses to advertise. However, Plaintiff and the Class never consented to such use.

8.      Consent is not all or nothing. Plaintiff and the Class members may have shared their names, address, phone numbers, locations, and other personal information with certain companies or government agencies in a variety of contexts. For example, Plaintiff or the Class members may have shared their home addresses and phone numbers with the IRS or DMV.

9.      But Plaintiff and the Class members did not consent to the commercial use of their names, personal information, and personas to promote subscriptions to a website with which they have no relationship. Defendant profits by peddling personal information it has no right to use. Plaintiff and Class members never agreed to the use of their names and personas to promote Defendant's product, which: openly trades on people's salacious interest in spying on their neighbors and acquaintances; is the subject of myriad consumer complaints; has an "F" rating with the Better Business Bureau; falsely represents that the individuals searched for have "Criminal Records" even when they do not; and violates multiple laws with apparent unconcern.

10.     By these actions, Defendant has violated and continues to violate California's Right of Publicity statute, codified in Cal. Civ. Code § 3344; California common law prohibiting misappropriation of a name or likeness; and California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 _et seq_. Accordingly, Plaintiff brings this Complaint on his own behalf and on behalf of a Class of similarly situated individuals.

**PARTIES**

11.    Plaintiff Eugene Mannacio is a citizen of California, residing in Novato, California, where he intends to remain. Plaintiff has never used or visited the website www.information.com. Plaintiff has never provided his consent for Defendant to use his name or persona in any way, including for the commercial purpose of advertising subscriptions.

12.    Defendant Information.com LLC owns and operates the website www.information.com.

13.    Before Plaintiff's counsel could complete their pre-suit investigation, counsel for Defendant purported to bar Plaintiff and his counsel from visiting the website and threatened counsel and Plaintiff with retaliatory litigation (see detail below). In part for this reason, Plaintiff does not know with certainty the location of Defendant's headquarters and the Defendant's state of incorporation.

14.    The Delaware Secretary of State lists "Information.com LLC" as a "Domestic" limited liability company. Accordingly, Plaintiff believes Defendant is incorporated in Delaware.

15.    The Better Business Bureau's profile for "Information.com LLC" lists Defendant's address as 8875 Hidden River Pkwy Ste 300, Tampa, FL 33637. Accordingly, Plaintiff believes Defendant is headquartered in Tampa, Florida. However, Plaintiff notes that a search for "Information.com LLC" with the Florida Division of Corporations returned no results under that name.

16.    Plaintiff reserves the right to update his allegations regarding Defendant's corporate structure, headquarters, and state of incorporation after receiving concrete answers to these questions through discovery.

**JURISDICTION AND VENUE**

17.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness ("CAFA")), because: (A) members of the putative Class are citizens of a state different from at least one defendant. Based on what counsel were able to glean before the Defendant barred Plaintiff and his counsel from visiting the website and threatened counsel and Plaintiff with retaliatory litigation, Plaintiff believes Defendant Information.com LLC is a

Delaware limited liability corporation headquartered in Florida. (B) The proposed Class consists of at least 100 members. Defendant provides a webpage on which prospective subscribers may "Browse Top Rated Full Name By State." Clicking on "California" yields a webpage listing, in ranked order, the 1,000 California residents whose names are the most searched-for on Information.com. Thus, the Class comprises, as a bare minimum, at least 1,000 members. On information and belief, Defendant has published, and advertises subscriptions using, teaser profiles about all or most of the adult population of California. Accordingly, the Class size is in the tens of millions. And (C) the amount in controversy exceeds $5,000,000 exclusive of interest and costs. Cal. Civ. Code § 3344 provides for statutory damages "equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered," as well as "any profits from the unauthorized use." The statute also allows for punitive damages and the award of attorneys' fees and costs. Because Defendant uses the names and personas of tens of millions of Class members without consent to advertise subscriptions, the amount in controversy is well over the jurisdictional limit.

18.     This Court has specific personal jurisdiction over the Defendant because the Defendant purposefully directed and directs its suit-related activities to this State and District. Defendants' suit-related activities directed to this State and District include:

19.     Defendant purposefully misappropriated the names, personal information, and personas of millions of California residents. On information and belief, Defendant obtained this misappropriated information by paying licensing fees to third-party data brokers. On information and belief, Defendant's contracts with said data brokers purport to grant Defendant the right to make commercial use of California residents' names and personal information. The third-party data brokers in fact have no right to or valid property interest in the names, personal information, and personas of the California residents they purportedly license to Defendant.

20.     Defendant knowingly published teaser profiles about millions of California residents as a means of advertising paid subscriptions to www.information.com. The teaser profiles advertise subscriptions by promising, *inter alia*, that a paid subscription will reveal additional personal information about the California resident portrayed in the teaser profile.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

21.     Defendant knows and intends that its teaser profiles about California residents are most likely to attract subscribers who are themselves California residents. The website's main landing page[2] answers the rhetorical question "Why Should I Do a People Search?" with the following bolded suggestions: "Find Information About Yourself;" "Vet Romantic Partners;" "Investigate New Neighbors;" "Screen a New Friend." A person viewing their own teaser profile obviously resides in the same state as the person portrayed in the teaser profile. And a person searching for a neighbor, new friend, or romantic partner who resides in California is highly likely to themselves reside in California. Thus, by publishing advertisements incorporating the names and personas of millions of Californians, and by encouraging prospective subscribers to view their own teaser profiles and the teaser profiles of their friends, neighbors, and romantic partners, Defendant purposefully directs its illegal advertisements to prospective subscribers in California (and specifically to this district, in which Plaintiff resides).

_____

[2] Available at: www.information.com.

22.    But this is not the only way in which Information.com intentionally targets California. Information.com also publishes a page entitled "Top Rated Full Names," accessible via a link from the main landing page, which allows prospective subscribers to view the teaser profiles of the most-searched for names. Clicking on "Top Rated Full Names" brings the potential subscriber to a webpage entitled "Browse Top Rated Full Names By State," a screenshot of which appears below:

1

23.     Clicking on "California" yields a webpage entitled "1000 Top Rated Full Names

2  in California," a screenshot of which appears below. Clicking on any of the listed names brings

3  the user to a page of teaser profiles promising more information about the California resident

4  portrayed if the visitor purchases a subscription to Information.com. Thus, Defendant knowingly

5  and purposefully targets California by publishing a California-specific webpage listing the most

6  commonly searched-for full names in California, and encouraging prospective subscribers in

7  California to click on and view the advertising teaser profiles associated with those names.

8

9

10

11

12



13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24.     On information and belief, Information.com's marketing efforts using the names and personas of California residents have been successful. Teaser profiles incorporating the names and personas of California residents have successfully attracted subscriptions from many California residents.

25.     Venue is appropriate pursuant to 28 U.S.C. § 1391(b). A substantial portion of the events and conduct giving rise to the violations alleged in this Complaint occurred in this district. The named Plaintiff resides in this district.

**DEFENDANT'S ILLEGAL MISAPPROPRIATION AND COMMERCIAL USE OF PLAINTIFF'S NAME AND PERSONA**

26.     Like all California residents, Plaintiff has the right to control the commercial use of his name, persona, and identity. Cal. Civ. Code § 3344. He has the right to exclude anyone from using his name and persona to advertise without his consent. *Id.* "Any person who knowingly uses" Plaintiff's name and persona "for purposes of advertising or selling, or soliciting purchases of, products . . . or services, without [Plaintiff's] prior consent," thereby violates California law. *Id.*

27.     Plaintiff has no relationship with Defendant. He is not a subscriber of information.com. To the best of his knowledge and memory, he has never visited the website www.information.com.

28.     Plaintiff did not provide consent to Defendant to use his name, personal information, or persona in any way. Had Defendant requested his consent, Plaintiff would not have provided it.

29.     Defendant knowingly uses Plaintiff's name and personal information to advertise subscriptions.

30.     Defendant publishes and publicly displays on its website at least two teaser profiles representing Plaintiff. A screenshot of one of the teaser profiles appears below. The teaser profile uniquely identifies Plaintiff by his first name ("Eugene"), last name ("Mannacio"), city of residence ("Novato"), and state of residence ("CA"). The teaser profile represents that Defendant possesses additional information about Plaintiff, including: (a) a photograph of his likeness (represented as the circular grey "default" profile icon and lock symbol in the upper left-hand corner); (b) his age (represented as the text "Age: Locked" immediately below his bolded name); and (c) Plaintiff's "Criminal Records," "Bankruptcies," and "Personal Assets" (represented as text adjacent to the green checkmarks). The teaser profile solicits the purchase of a "Special 5-Day Trial Pass" for $0.99. In exchange for a paid subscription, the purchaser will receive: (a) access to the locked information about Plaintiff; (b) access to "Unlimited Premium Reports" about any individual in Defendant's database; and (c) access to a variety of other types of reports, including "Mugshot Lookups" and "Profile Image Lookups." Thus, Defendant advertises subscriptions using Plaintiff's name, persona, personal information, and identity.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

31.    Defendant publicly admits that it publishes teaser profiles, including the teaser profiles about Plaintiff and the members of the proposed Class, to: (1) allow prospective customers to verify based on name and location that the person portrayed is the person in whom they are interested; and (2) based on that verification, entice the prospective consumer to commit to a paid subscription. On February 14, 2024, Defendant wrote to the Better Business Bureau, characterizing "our search process" as one in which "[c]ustomers can freely search for records on out [*sic*] homepage . . . Searches . . . include information such as first and last name, city/state, _allowing customers to verify desired information before committing to a purchase_." (emphasis added.)  A screenshot of this communication appears below.



**ADDITIONAL BUSINESS INFORMATION**                                    See all additional business information

**Advertising Review:** On 02/05/2024 BBB wrote to Information.com LLC and asked the business to substantiate the following advertising claims:
Consumer complaint: It is advertised as a free search report on the website, that is false
On 02/14/2024 Business responded to BBB stating:
Please review our search process. Customers can freely search for records on out homepage to confirm availability before making a purchase. Searches are free and include information such as first and last name,
city/state, allowing customers to verify desired information before committing to a purchase. We don't require customers to buy access to our site before conducting a free search, ensuring the information they seek is available without any obligations.
BBB found that these claims were in violation of the BBB Code of Advertising. As of the business has failed to voluntarily substantiate these claims.

Read less

32.    Thus, by Defendant's own characterization, its searchable teaser profiles exist to excite interest in purchasing a subscription based on the identity of the individual portrayed. Defendant admits it displays "first and last name [and] city/state" precisely because this information allows the consumer to "verify" an identity before purchasing a subscription. This is the textbook definition of commercial misappropriation of names and identities.

33.     Defendant did not request Plaintiff's "prior consent" before publishing its teaser profiles about Plaintiff, as required by California law. *See* Cal. Civ. Code § 3344(a). Indeed, the teaser profile shown above touts Plaintiff's ignorance *as a selling point*. A yellow "alert" icon and text in the bottom right corner promise potential subscribers that "All your searches are ANONYMOUS and nobody will be notified about it." (See screenshot of Plaintiff's teaser profile above.) The main landing page of the website similarly promises, "Don't worry, your information is kept private, and *nobody will know about your search*." (Emphasis added.) Thus, far from eliciting Plaintiff's prior consent as required by law, Defendant *deliberately hides* the existence of the teaser profiles about Plaintiff from Plaintiff, and *advertises* this deception as a *feature*.

34.     Defendant displays its teaser profiles about Plaintiff to prospective subscribers via four similar but distinct advertising flows. For purposes of this complaint, a "flow" means a series of webpages and/or pop-ups shown in a logical progression to the prospective subscriber. The four advertising flows are as follows:

Advertising Flow #1: "Name Search"

35.     The "Name Search" flow is the advertising flow that appears most prominently on the Defendant's website. The main landing screen on Defendant's website, www.information.com, is shown below.

36.     As depicted above, Defendant characterizes itself as a "Free People Search Engine."[3] The landing page prompts potential subscribers to perform a "People Search" by entering the first name, last name, and location of a targeted individual. Defendant promises that a search will "Dig deep and discover everything you need to know" about the targeted individual, including "Sex Offender Status," "Current and past addresses," the identities of their "Relatives," their "Age and date of birth," and their "Full name and any previous names." (See screenshot above).

37.     The screenshot above depicts the search bar as it appears after a prospective subscriber enters the name and location of a targeted individual. In this case, Plaintiff's counsel entered the name and location of one of the attorneys representing Plaintiff. Entering the name and location of Plaintiff yields similar results, as it does for all Class members.

38.     Throughout this Complaint, Plaintiff's counsel often use screenshots depicting a search for an attorneys' name rather than Plaintiff's. As alleged in more detail below, before counsel could complete their investigation of Plaintiff's claim, counsel for Defendant sent a threatening message purporting to bar counsel and Plaintiff from accessing the website and threatening counsel and Plaintiff with retaliatory litigation should they access the website. Accordingly, counsel prepared this complaint using only screenshots gathered before receiving Defendant's threatening message. When Defendant either voluntarily allows Plaintiff and counsel to access the website, or becomes subject to a court order mandating such access, Plaintiff intends to collect screenshots showing that the advertising flows work in the same way for Plaintiff as depicted here with respect to Plaintiff's counsel. To be clear, Plaintiff's counsel did perform a name search using Plaintiff's name before receiving the threatening message, but did not collect contemporaneous screenshots, except for the final teaser profile and solicitation depicted above.

_____

[3] In February 2024, the Better Business Bureau found that Defendant's claims to be "free" people search engine "were in violation of the BBB Code of Advertising." Available at: https://www.bbb.org/us/fl/tampa/profile/search-engine-marketing/informationcom-llc-0653-90440287

1

2

3

4

5

39.     After the prospective subscriber clicks the yellow "Search" button, Defendant displays a series of webpages and pop-ups representing that Defendant is in the process of gathering a variety of information about Plaintiff. Some pop-ups request additional information from the searcher about the targeted individual; these pop-ups may be skipped by ignoring them or clicking "I don't know." A non-exhaustive sampling is shown here:

6

7

8

9

10



11

12

13

14

15

16

17

18

19



20

21

22

23

24

25

26

27

28





40.     On one of the webpages in this flow, Defendant represents that "We can notify you any time there's updates for [Plaintiff's] report – You'll never be left in the dark with our service! People are frequently creating social media profiles, moving, committing crimes . . . Stay updated with Information.com."  Thus, Defendant advertises that paying subscribers will receive *real-time updates* about Plaintiff's activities, including when he moves addresses or commits a crime. This page is shown below:



CLASS ACTION COMPLAINT – 15

41.     After the prospective subscriber clicks "Continue," Defendant displays the teaser profile about Plaintiff shown above. The teaser profile uses the potential subscriber's interest in Plaintiff as bait to entice the purchase of a subscription. Thus, Defendant advertises subscriptions using Plaintiff's name and persona in violation of California law.

42.     On information and belief, third parties, including third parties in California, have stepped through the "Name Search" flow after searching for Plaintiff, and have viewed his teaser profile. On information and belief, third parties, including third parties in California, have purchased subscriptions to Information.com after stepping through the "Name Search" flow and viewing Plaintiff's teaser profile.

43.     It is imminently likely that third parties, including third parties in California, will step through the "Name Search" flow and view Plaintiff's teaser profile as a result. It is also imminently likely that they will purchase subscriptions after viewing Plaintiff's profile.

Advertising Flow #2: "Popular Names"

44.     The "Popular Names" advertising flow begins when the user clicks on one of the links labelled under the heading "Popular Names" on Defendant's landing page. The links purport to show the most searched-for names: (a) on specific recent days; and (b) of all time. A screenshot showing the relevant portion of Defendant's landing page is shown below. The "Popular Names" section appears on the right side of the page:

45.     Clicking on any of the "Popular Names" links brings the prospective subscriber to a webpage purporting to list the top 1,000 most frequently searched-for names in the relevant category. As described in more detail in the Jurisdiction and Venue section above, the "Top Rated Full Names" category is organized by state. Below is a screenshot depicting the 1,000 most searched-for names in California:



46.    Clicking on any of the names brings the prospective subscriber to a list of teaser profiles. Each teaser profile uniquely identifies the individual portrayed. The teaser profiles in this section of the website include much more personal information than that depicted in the teaser profiles that appear at the end of the "Name Search" flow. Each teaser profile includes full name, age, current location, current full address, past full addresses, the identities of relatives, partially redacted emails, and current and past phone numbers. For privacy, counsel have redacted this information in the screenshot below.



47.     Again, counsel illustrate this advertising flow using a different name than Plaintiff's because Defendant deliberately impeded counsel's investigation of this lawsuit, as described more fully below. On information and belief, Plaintiff's name appears in one or more of the "Popular Names" lists, and clicking on his name leads to a list of more fulsome teaser profiles like those screenshotted above, at least one of which uniquely identifies Plaintiff. Plaintiff intends to verify this allegation once he and his counsel regain access to Defendant's publicly available website without the threat of retaliatory litigation.

48.     After the prospective subscribers clicks "Open Report" on any of the more fulsome teaser profiles shown above, including Plaintiff's profile, Defendant displays a solicitation for a paid subscription.

49.     Thus, Defendant advertises subscriptions using Plaintiff's name and persona in violation of California law.

50.     On information and belief, third parties, including third parties in California, have stepped through the "Popular Names" flow after searching for Plaintiff and have viewed his more fulsome teaser profile. On information and belief, third parties, including third parties in California, have purchased subscriptions to Information.com after stepping through the "Popular Names" flow and viewing Plaintiff's more fulsome teaser profile.

51.     It is imminently likely that third parties, including third parties in California, will step through the "Popular Names" flow and view Plaintiff's fulsome teaser profile as a result. It is also imminently likely that they will purchase subscriptions after viewing Plaintiff's profile.

1    Advertising Flow #3: "Internet Search Engine"

2          52.    Defendant also advertises by encouraging Internet search engines like Google,

3    Bing, and Brave to display links to Defendant's teaser profiles whenever someone searches for a

4    name. On information and belief, Defendant devotes substantial resources to ensuring its teaser

5    profiles appear prominently in search engine results.

6          53.    From the perspective of the prospective subscriber, this advertising flow begins

7    when the prospective subscriber searches for an individual using a search engine. The search

8    results returned may include a link to the teaser profile on Defendant's website about that

9    individual. Below is a screenshot of such a link, which was returned in response to a Google

10   search for an individual's name. For privacy, counsel have redacted the individual's name, home

11   address, and the identities of the individual's relatives.



16         54.    When the prospective subscriber clicks on the link displaying the individual's

17   name, personal information, and persona, Defendant displays a list of fulsome teaser profiles,

18   like those shown in the "Popular Names" advertising flow above (screenshot showing fulsome

19   teaser profiles for "Maria Hernandez").

20         55.    Again, counsel illustrate this advertising flow without showing an advertisement

21   that uses Plaintiff's name because Defendant deliberately impeded counsel's investigation of this

22   lawsuit, as described more fully below. On information and belief, Defendant makes Plaintiff's

23   more fulsome teaser profile available to search engines and has invested in SEO optimization to

24   make Plaintiff's more fulsome teaser profile appear prominently in search engine results when

25   anyone searches for Plaintiff.

26         56.    After the prospective subscribers clicks "Open Report" on any of the fulsome

27   teaser profiles, including Plaintiff's profile, Defendant displays a solicitation for a paid

28   subscription.

57.     Thus, Defendant advertises subscriptions using Plaintiff's name and persona in violation of California law.

58.     On information and belief, third parties, including third parties in California, have stepped through the "Internet Search Engine" flow by searching for Plaintiff in a search engine and viewing the link to his teaser profile in the search results. On information and belief, third parties, including third parties in California, have clicked the link to his teaser profile and viewed his fulsome teaser profile on information.com. On information belief, third parties, including third parties in California, have purchased a subscription to Information.com after stepping through the "Internet Search Engine" flow and viewing Plaintiff's fulsome teaser profile.

59.     It is imminently likely that third parties, including third parties in California, will step through the "Internet Search Engine" flow and view Plaintiff's fulsome teaser profile as a result. It is also imminently likely that they will purchase subscriptions after viewing Plaintiff's profile.

Advertising Flow #4: "Directory"

      60.    The "Directory" advertising flow begins when a prospective subscriber decides to skip the "Name Search," and instead locates the persona in whom they are interested by using the alphabetized directory on Defendant's landing page.  The landing page includes a blue bar labeled "US People Directory," shown at the top of the screenshot below:

61.     When the prospective subscriber clicks on any of the alphabetical letters, Defendant displays a list of the people in Defendant's database whose last names begin with that letter. For example, clicking on "A" yields a long list of individuals with "Last Name (A)", a selection of which appear in the screenshot below.

62.     After the prospective subscriber clicks on any of the names in this list, Defendant displays a list of more fulsome teaser profiles representing individuals with that name. Like the teaser profiles Defendant displays in the "Popular Name" flow, each teaser profile shown in the "Directory" flow includes full name, age, current location, current full address, past full addresses, the identities of relatives, partially redacted emails, and current and past phone numbers. For privacy, counsel have redacted this information in the screenshot below.

63.     Again, counsel illustrate this advertising flow using a different name than Plaintiff's because Defendant deliberately impeded counsel's investigation of this lawsuit, as described more fully below. On information and belief, Plaintiff's name appears under the letter "M" in the directory Defendant publishes on its landing page, and clicking on Plaintiff's name leads to a list of more fulsome teaser profiles like those screenshotted above, at least one of which uniquely identifies Plaintiff. Plaintiff intends to verify this allegation once he and his counsel regain access to Defendant's publicly available website without the threat of retaliatory litigation.

64.     After the prospective subscribers clicks "Open Report" on any of the more fulsome teaser profiles shown above, including Plaintiff's profile, Defendant displays a solicitation for a paid subscription.

65.     Thus, Defendant advertises subscriptions using Plaintiff's name and persona in violation of California law.

66.     On information and belief, third parties, including third parties in California, have stepped through the "Directory" flow and viewed the resulting list, which includes Plaintiff's name. On information and belief, third parties, including third parties in California, have clicked on Plaintiff's name in the list and thereby viewed his more fulsome teaser profile. On information and belief, third parties, including third parties in California, have purchased subscriptions to Information.com after stepping through the "Directory" flow and viewing Plaintiff's more fulsome teaser profile.

67.     It is imminently likely that third parties, including third parties in California, will step through the "Directory" flow and view Plaintiff's fulsome teaser profile as a result.  It is also imminently likely that they will purchase subscriptions after viewing Plaintiff's profile.

\*\*\*\*\*

68.     Defendant's sole purpose in publishing the teaser profiles about Plaintiff and incorporating those profiles in the above-described advertising flows is to solicit the purchase of website subscriptions.

69.     All of Defendant's advertising flows promise that the full report about Plaintiff contains scandalous, embarrassing, and highly personal information about Plaintiff. As shown in the screenshots above: (a) the "Name Search" teaser profile references Plaintiff's supposed "Criminal Records" and "Bankruptcies;" (b) the screen that immediately precedes the teaser profile in the "Name Search" flow represents that Defendant "**has uncovered shocking data**" about Plaintiff, including "**multiple criminal records**," "**financial information**," and "**personal assets**" (bold emphasis in original); (c) another screen in the "Name Search" flow represents that Defendant's "reports contain graphic content" and asks the potential subscriber to "**confirm again that you're prepared for the unexpected!**" (bold emphasis in original); and (d) the main landing page for the website warns potential subscribers, "You may have to agree to see 'Embarrassing' [*sic*] information about . . . the person you're searching for."

70.     While Defendant advertises that prospective subscribers can purchase a trial subscription for just $0.99, the true cost of a subscription is much higher. Once the 5-day trial pass expires, the subscription automatically renews at a much higher rate. Deceptively, Defendant does not disclose this fact on the teaser profile page soliciting a subscription. (*See* screenshot of Plaintiff's teaser profile above.) The Better Business Bureau has received dozens of consumer complaints about Defendant's deceptive advertising, auto-renewal practices, and ineffective and illegal cancellation procedures. One such complaint appears below:

| | |
|---|---|
| **Initial Complaint** | **Complaint Type:** Billing/Collection Issues |
| 02/21/2024 | **Status:** Answered ❓ |

I purchased the free trial for $0.99 on 2/13/24 thinking there would at least be a 30 day period where I was able to cancel my subscription before receiving additional charges. Instead, I was charged today on 2/18/2024 for the amount of $29.99 with no notice for why this charge was made. Additionally, the site states that it is possible to change/cancel subscriptions from their Account page which is a blatant lie as there is no way to do so, you must email there support and request a cancellation. It's a shame because it is a decent site in terms of functionality and search options, but these billing practices put this site in line with straight up fraudulent businesses that do the same thing.

71.     Defendant misappropriated Plaintiff's name, persona information, persona, and identity without permission from Plaintiff.

72.     Defendant has intellectual property and dignitary interests in his name, persona, and identity, recognized by California statutory and common law. He has an ownership interest in the commercial use of his name, persona, and identity. He has the right to exclude anyone from making commercial use of his name, persona, and identity. He has the right to receive monetary compensation for the commercial use of his name, persona, and identity.

73.     Plaintiff is deeply disturbed and uncomfortable in the knowledge that Defendant has used and continues to use his name and persona to advertise a commercial product he has no interest in supporting. Defendant's non-consensual use of his name, persona, and identity offends his dignity and disturbs his peace of mind. Plaintiff strongly disapproves of Defendant's product and business, which: (a) traffics in prospective users' interest in learning scandalous and salacious information about their friends, family, partners, and neighbors; (b) intimates that the subjects of its teaser profiles have "Criminal Records" and are the subjects of "Sex Offender Info" even if they are not (*see* screenshot of Plaintiff's teaser profile above); (c) systematically misappropriates the names and identities of millions of individuals without obtaining their consent or providing legally mandated compensation; (d) encourages stalking and identity theft by providing intimate personal information, including current addresses, phone numbers, emails, and relatives, to anyone willing to pay for it; (e) has an "F" rating from the Better Business Bureau; and (f) is the subject of dozens of consumer complaints regarding its deceptive advertising; fraudulent billing, renewal, and cancellation policies; and mishandling of individual's names and personal information. Plaintiff does not wish to have his name and persona used to promote Defendant's disturbingly intrusive, poorly rated, and complaint-ridden product.

74.     Defendant has injured and continues to injure Plaintiff by misappropriating his intellectual property without compensation. Plaintiff has suffered monetary harm in the amount he should have been paid as a reasonable royalty in exchange for the commercial use of his persona. Plaintiff has also suffered monetary harm in the amount of Defendant's unjust

enrichment through its illegal use of his name and persona.

75.    Defendant has injured and continues to injure Plaintiff by invading and denying him his right to control the commercial use of his name and persona, which is a substantive right long recognized at common law and more recently codified in California's right of publicity statute.

76.    Defendant has injured and continues to injure Plaintiff's dignity and mental well-being by using his name and persona to promote a product he never agreed to promote.

77.    Defendant's illegal use of Plaintiff's name and persona have left Plaintiff worried and uncertain about his inability to control how his name and persona are used. Defendant's non-consensual use of Plaintiff's name and persona to advertise represents an alarming invasion of his intellectual property rights and privacy. Plaintiff believes that Defendant's publication of teaser profiles encourages and enables stalking, identity fraud, and harassing marketing and sales communications.

1

**COUNSEL'S INVESTIGATION OF PLAINTIFF'S CLAIM**

2        78.      Plaintiff's counsel visited the website www.information.com for the first time on

3    February 27, 2024. On that day and the subsequent day, counsel collected some of the screenshots

4    that appear in this complaint. At 12:21pm EST on February 28, 2024, counsel sent the following

5    email to Defendant:

6

| Benjamin Osborn <ben@benosbornlaw.com> | Wed, Feb 28, 2024 at 12:21 PM |
|---|---|

To: support@information.com

Hello,

I am writing concerning the Terms of Service published on your website.

I am an attorney. I recently visited your website for the purpose of investigating how your site works, in contemplation of potential legal claims.

For the avoidance of doubt, I do not intend my use of the website to bind my current or future clients to any agreement with Information.com LLC or any related entities ("Information.com"), including but not limited to the Terms of Service and the arbitration and class action waiver provisions contained therein. I received no instruction from any client to agree to any contract with Information.com. I do not have authority to agree to arbitration or to a class action waiver on behalf of any of my clients. I do not have authority to agree to any contract with Information.com on behalf of any of my clients. I expressly reserve the right to file a legal claim in court on behalf of a client.

Further, I do not agree to the Terms of Service on my own behalf. I do not agree with your assertion that the Terms of Service form a binding agreement simply by virtue of my visiting the website. Such browse-wrap agreements are procedurally unconscionable. The Terms also contain numerous substantively unconscionable provisions, including but not limited to failure to provide an opt-out option with respect to the arbitration clause.

Best,

Ben

--
Benjamin R. Osborn
(347) 645-0464
ben@benosbornlaw.com

18        79.      As shown above, counsel informed Defendant that he: (a) was visiting the website

19   for the purpose of investigating potential legal claims; (b) did not intend his use of the website to

20   bind any current or future client to the Defendant's Terms of Service, and specifically did not

21   intend to bind any current or future client to the arbitration agreement and class action waiver

22   provisions therein; (c) did not have authority from any client to agree to any contract with

23   Defendant; (d) did not have authority from any client to agree to arbitration or a class action

24   waiver on their behalf; (e) did not agree to the Terms; and (f) believed the Terms to be

25   procedurally and substantively unconscionable.

26        80.      After sending the February 28 email, and before receiving the threatening email

27   from Defendant's counsel described more fully below, counsel collected some additional

28   screenshots that appear in this Complaint, including the teaser profile depicting Plaintiff's name,

personal information, and persona.

81.    All of the screenshots in this Complaint that depict webpages on www.information.com were collected before counsel received Defendant's threatening email of March 6, 2024.

**DEFENDANT PURPORTS TO BAR PLAINTIFF AND HIS COUNSEL FROM ACCESSING PLAINTIFF'S OWN PERSONAL INFORMATION, AND THREATENS PLAINTIFF AND HIS COUNSEL WITH RETALIATORY LITIGATION**

82.    On March 6, 2024, at 5:31 EST, counsel for the Defendant sent the following email to counsel in reply to his email of February 28:

On Wed, Mar 6, 2024 at 5:31 PM Ginny Sanderson <Ginny@kr.law> wrote:
Dear Mr. Osborn,

This law firm represents Information.com.  I am in receipt of your email below.  As an attorney, you must know that agreeing to the Terms of Service and Privacy Policy is a condition of accessing the website. Accordingly, if you and your client do not agree to the same, then you must immediately cease and desist any access to or use of the website.  Any further access or use by you or your law firm, whether on behalf of yourself or your clients, will be deemed unauthorized access in violation of the Computer Fraud and Abuse Act and similar legislation.

Best regards,
_____

Ginny Sanderson,
PARTNER
KRONENBERGER ROSENFELD, LLP
150 Post Street, Ste 520 San Francisco, CA 94108
Phone: (415) 955-1155 Ext. 113

83.    Thus, after failing to obtain Plaintiff's prior consent for its commercial use of his name and personal information as California law requires, Defendant compounded its wrongdoing by purporting to *bar Plaintiff from accessing his own name and personal information on Defendant's publicly available website*. Defendant purported to instruct Plaintiff and his counsel to "immediately cease and desist any access to or use of the website." Defendant further threatened retaliatory litigation against Plaintiff and his counsel, writing that "Any further access . . . will be deemed unauthorized access in violation of the Computer Fraud and Abuse Act and similar legislation."

84.    Defendant sent this threatening email *after* counsel informed Defendant he was visiting the website to investigate "potential legal claims." Thus, Defendant's threat represents a

deliberate and calculated attempt to prevent Plaintiff and his counsel from gathering the information necessary to support this lawsuit.

85.     Defendant's threatening message and attempt to bar Plaintiff's access violates California's Consumer Privacy Act (CCPA) and Privacy Rights Act (CPRA). *See* Cal. Civ. Code § 1798.100 *et seq.* The law recognizes an individual's "right to know what personal information is sold or shared and to whom." Cal. Civ. Code § 1798.115. The law further provides that the business must, if it "maintains an internet website, make the internet website available to consumers to submit requests for information required to be disclosed" by the CCPA and CPRA. Cal. Civ. Code § 1798.130.

86.     Thus, under California law, because Defendant sells and shares personal information about Plaintiff, Defendant *must* "make [its] website available" to Plaintiff. Plaintiff has the legally recognized "right to know" what information Defendant possesses about him and with whom Defendant has shared that information. Plaintiff's rights under the CCPA and CPRA are expressly tied to his right of privacy guaranteed under the California constitution, *see* § 1798.1, and cannot be made contingent on Plaintiff's agreement to a Terms of Service or any other contract.

87.     Further, the CCPA and CPRA forbid retaliation against an individual for exercising any of the rights protected by the CCPA and CPRA. *See* Cal. Civ. Code § 1798.125 ("A business shall not discriminate against a consumer because the consumer exercised any of the consumer's rights under this title."). Among the types of retaliation expressly forbidden by the statute are "Denying goods or services to the consumer" or "Suggesting that the consumer will receive a . . . different level of or qualify of goods or services." *Id.* Denying access to a website is "[d]enying . . . services to the consumer," and therefore represents a form of retaliation expressly forbidden by California law.

88.     By purporting to deny Plaintiff and his counsel access to the website unless Plaintiff agrees to the Terms and thereby agrees to sacrifice his right to bring this lawsuit, Defendant committed illegal retaliation under the CCPA and CPRA.

89.     By threatening Plaintiff and his counsel with retaliatory litigation under the

Computer Fraud and Abuse Act should they visit the website _to access Plaintiff's own personal information_, Defendant committed illegal retaliation under the CCPA and CPRA.

90.    Defendant's threatening message and attempt to bar Plaintiff's access also violates the California Right of Publicity Act and related misappropriation tort. _See_ Cal. Civ. Code § 3344. The statute and tort recognize Plaintiff's _ownership right_ in his name and persona and right to _control how his name and persona is used_. _Id._ The rights of ownership and control necessarily entail the right to _know whether and how_ one's name and persona are being used. It would be utterly illogical if California law granted Plaintiff the right to control how his name and persona are used, but not the right to _access and read a publicly available website_ that is openly using his name and persona for a commercial purpose. The right to control and exclude necessarily implies the right to access and know. As with the rights guaranteed by the CCPA and CPRA, the rights guaranteed by California's right of publicity act are not and cannot be made contingent upon Plaintiff's agreement to a Terms of Service or any other contract. Thus, Defendant's purported barring of Plaintiff and his counsel from its website violates California statutory and common law.

91.    Defendant's attempt to bar Plaintiff and his counsel from visiting the website to investigate a potential legal claim would, if enforced by a court, violate Plaintiff's First Amendment right to petition the government for redress of grievances. Counsel informed Defendant he was visiting the website to investigate potential legal claims. Under Fed. R. Civ. P. 11 & 12, counsel is _obligated_ to perform a pre-suit investigation to support a client's claim. Defendant's attempt to bar Plaintiff and his counsel from visiting the website thus represents a deliberate attempt to prevent counsel's investigation and prevent Plaintiff from filing this Complaint. Accordingly, Defendant's cynical maneuver restricts Plaintiff's First Amendment right to petition the government for redress of grievances.

92.    A Judge of this District and the Ninth Circuit Court of Appeals roundly rejected a similar attempt by one of Defendant's competitors to bar a plaintiff and her counsel from accessing its website to investigate a potential right of publicity claim under California law. In _Callahan v. PeopleConnect_, as here, the defendant argued that plaintiff's counsel could not visit

the defendant's website to confirm defendant's misuse of the plaintiff's name and persona without agreeing to the Terms and thereby binding his client to the arbitration clause and class action waiver therein. 2021 U.S. Dist. LEXIS 94467 (N.D. Cal. May 18, 2021), *aff'd*, 2022 WL 823594 (9th Cir. Mar. 18, 2022). Rejecting defendant's argument, Judge Edward Chen wrote:

> [C]ounsel's use of the website was undertaken as part of the investigation – an investigation consistent with counsel's Rule 11 obligations . . . into whether Plaintiffs did, in fact, have claims against [the defendant]. The Court is troubled by [the defendant's] suggestion that a plaintiff's access to a judicial forum may be cut off simply because counsel for the plaintiff fulfilled a duty under Rules 11 and 12 to investigate prior to filing suit. Under [the defendant's] position, Plaintiffs here would either file suit without doing the necessary pre-suit investigation, raising serious concerns, or would waive the right to a judicial forum, a right protected under the First Amendment.

*Id.* at *17-18.

93.     Thus, Defendant's attempt to bar Plaintiff and his counsel from accessing the website to investigate Plaintiff's claim infringes Plaintiff's First Amendment right to petition the government for redress of grievances.

94.     Should Defendant persist in its illegal attempt to bar Plaintiff and counsel from accessing its publicly available website, Plaintiff intends to move for an injunction from this Court mandating access. Plaintiff reserves the right to seek attorneys' fees, costs, and sanctions, should such motion practice become necessary.

### NO AGREEMENT TO ARBITRATE OR CLASS ACTION WAIVER

95.     There is no agreement of any kind between Plaintiff and Defendant. Plaintiff has never agreed, and does not agree, to arbitrate his claims against Defendant. Plaintiff has never agreed, and does not agree, to waive his right to pursue claims against Defendant as a Class representative. Plaintiff has never agreed, and does not agree, to the Terms of Service on Defendant's website.

96.     Plaintiff retained counsel for the purpose of pursuing this claim on March 12, 2024, more than a week *after* counsel informed Defendant on February 28 that counsel did <u>not</u> have authority to agree to the Terms on behalf of any current or future client, did <u>not</u> agree to the Terms on his own behalf or on behalf of any client, and did <u>not</u> intend his use of the website to bind any current or future client to the Defendant's Terms of Service. Because counsel informed

Defendant of these facts well before Plaintiff retained him, there is no legally cognizable theory on which Defendant could even attempt to impose the Terms against Plaintiff.

97.     In his retainer agreement with counsel, Plaintiff directed counsel to pursue this class action in court. Plaintiff expressly instructed his counsel not to agree to arbitration, a class action waiver, or any other agreement with Defendant on his behalf. Plaintiff instructed his counsel to pursue this action in court as a class action. Plaintiff also instructed counsel to share the retainer agreement with Defendant to ensure that Defendant does not attempt to assert the existence of a contract where none exists. Plaintiff disclaimed, disavowed, and repudiated any purported agreement with Defendant, including any purported agreement to the terms Defendant may falsely assert exists. Counsel intend to share the retainer agreement with Defendant's counsel via email, contemporaneously with the filing of this Complaint.

98.     Although repudiation is not necessary because no agreement exists or has ever existed between Plaintiff and Defendant, for the avoidance of doubt, Plaintiff hereby expressly repudiates and disavows any purported agreement between himself and Defendant.

99.     The Terms of Service available on Defendant's website is both procedurally and substantively unconscionable. Should Defendant continue refusing to allow Plaintiff and his counsel to visit the website to investigate this case without agreeing to the Terms (to which Plaintiff and his counsel emphatically do not agree), Plaintiff intends to move this Court for a declaration that Defendant's Terms of Service are unconscionable and unenforceable under California law. Should Defendant attempt to enforce the arbitration agreement and class action waiver provisions in the Terms against Plaintiff, Plaintiff intends to pursue the same declaratory relief, in addition to a motion to strike and for sanctions under Fed. R. Civ. P. 11.

**DEFENDANT'S ILLEGAL MISAPPROPRIATION AND COMMERCIAL USE OF CLASS MEMBERS' NAMES AND PERSONAS**

100.    Just as Defendant publishes and publicly distributes at least two types of teaser profile about Plaintiff, so too Defendant publishes and publicly distributes teaser profiles about millions of other individuals, including the members of the proposed Class. (See Class allegations below for a definition of the proposed Class.) The teaser profiles about absent Class members

are identical in form, content, and design to the teaser profiles about Plaintiff.

101.     Just as Defendant advertises subscriptions using at least four advertising flows that terminate in a teaser profile about Plaintiff, so too Defendant advertises subscriptions using the same four advertising flows with respect to millions of other individuals, including the members of the proposed Class.

102.     Accordingly, each of Plaintiff's allegations with respect to Defendant's illegal use of his name and persona apply equally to each member of the proposed Class.

**CONSUMER COMPLAINTS ABOUT DEFENDANT'S ILLEGAL**

**MISAPPROPRIATION AND COMMERCIAL USE OF NAMES AND PERSONAS**

103.     Defendant is the subject of many complaints and negative reviews available on the Better Business Bureau's website. At the time of filing, Defendant's Better Business Bureau rating is "F"; Defendant is not BBB accredited; the average customer review is 1.25 stars out of five; and Defendant has been the subject of forty-seven customer complaints filed with the Better Business Bureau.

104.     Many of those complaints and negative reviews focus on the unlawful misappropriation that gave rise to this lawsuit. Reviewers complain about Defendant's misappropriation of their personal information without consent. Importantly, they also complain that although Defendant purports to allow individuals to request that their information be removed from the site, _Defendant does not honor requests to remove personal information._

105.     California's right of publicity act requires that Defendant obtain a person's consent _before_ using their name and persona to advertise subscriptions. Accordingly, even if Defendant honored individual's requests that their information be removed _after_ Defendant published their teaser profiles, this would not satisfy Cal. Civ. Code § 3344. Nevertheless, that Defendant purports to allow after-the-fact requests for removal, but fails to honor such requests, illustrates Defendant's disregard for the law and contempt for the rights of the individuals portrayed in its searchable database.

1

106.    A non-exhaustive sample of relevant complaints and reviews appears below, all

2    of which are available online on Defendant's profile with the Better Business Bureau:

3

4     **Initial Complaint**                    **Complaint Type:** Problems with Product/Service
         02/15/2024                           **Status:** Answered

5        Information.com does not have a functioning process to Do Not Share My Data as required
         by law. The process is either intentionally not working or broken by a software flaw. As a
6        result, I am unable to maintain my personal privacy. When a ****** search is performed with
         my name, city and state, detailed results are presented. Ive asked Information.com to
7        provide an alternative way to remove my data from search results.

8

9     **Initial Complaint**                    **Complaint Type:** Problems with Product/Service
         02/05/2024                           **Status:** Answered

10       I requested to remove my profile a month ago. It takes 7 days according to your files.
11       Nothing has been removed and I can't resubmit the request. I'm reporting you to
         BBB.******************************************************* my information

12

13    **Initial Complaint**                    **Complaint Type:** Problems with Product/Service
         02/05/2024                           **Status:** Answered

14       I want my personal information removed from the site.

15

16

17    Marianne M
         ⭐☆☆☆☆                                                          02/17/2024

18       I have tried to opt out so many times and even tried calling these people to please delete me/ 

19

20

21    keith l
         ⭐☆☆☆☆                                                          02/17/2024

22       This website expose people's personal information until you send them a legal notice 

23

24

25

26

27

28

CLASS ACTION COMPLAINT – 37

107.   Thus, as the complaints above reveal, Defendant systematically fails to honor requests to have names and personal information removed from its site. Further, Defendant has received numerous complaints about its unlawful misappropriation of names and personas. Despite receiving these complaints, Defendant has done nothing to rectify its illegal practices.

## CLASS ACTION ALLEGATIONS

108.   Plaintiff brings this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3). Plaintiff seeks to represent the following Class: "All adults who (1) are not subscribers of Information.com; (2) reside or resided in California during the relevant limitations period; and (3) whose names and personal information Defendant published in one or more teaser profiles used to promote subscriptions." Plaintiff reserves the right to modify the proposed Class definition in his forthcoming Class certification motion after conducting discovery.

109.   Excluded from the proposed Class are the judge to whom this case is assigned and the judge's immediate family; counsel in this matter; and Defendant, its officers and directors, successors, and assigns.

110.   **Numerosity.** The members of the proposed Class are so numerous that joinder of individual claims is impractical. As alleged above, Defendant has published advertising teaser profiles incorporating the names and personas of millions of Californians. The Class likely comprises millions of people.

111.   **Commonality and Predominance.** There are significant questions of law and fact common to the Class members. Common questions include:

  a.   Whether Defendant's misappropriation and commercial use of names and personal information in the advertising techniques described in this Complaint constitutes the knowing use without prior consent of another's name and persona for the purposes of advertising products within the meaning of Cal. Civ. Code § 3344.

  b.   Whether Defendant solicited and obtained consent from Plaintiff and the Class members prior to using their personas in promotional advertising flows, as

required by Cal. Civ. Code § 3344.

    c.   Whether Defendant's commercial use of Plaintiff's and Class members' names and personal information in advertisements falls within the exceptions for "use in connection with any news, public affairs, or sports broadcast or account, or any political campaign" within the meaning of Cal. Civ. Code § 3344.

    d.   The amount by which Defendant profited from and was unjustly enriched by its illegal use of Plaintiff's and Class members' names, personal information, and personas.

    e.   Whether Defendant's conduct described in this Complaint violates California common law prohibiting the misappropriation of a name or likeness.

    f.   Whether Plaintiff and the Class are entitled to the injunctive, declaratory, monetary, punitive, and other relief requested in this Complaint.

112.   **Typicality.** Plaintiff's claims are typical of those of the proposed Class. Plaintiff and all members of the proposed Class have been harmed by Defendant's misappropriation and misuse of their identities, names, personas, and other personal information in advertisements promoting website subscriptions. Defendant presents its advertisements in the same way for each Class Member.

113.   Just as it did with Plaintiff, Defendant appropriated the names, personal information, and personas of all Class members without their prior consent. Defendant's sole purpose in appropriating Class Members' information and personas was to solicit the purchase of paid subscriptions.

114.   Just as it did with Plaintiff, Defendant injured, continues to injure, and imminently threatens to injure all Class members. Defendant injured Class members by misappropriating their intellectual property without compensation. Class members have suffered, and will continue to suffer, monetary harm in the amount they should have been paid as reasonable royalties in exchange for the commercial use of their names and personas. Class members have also suffered, and will continue to suffer, monetary harm in the amount of Defendant's unjust enrichment

through its illegal use of their names and personas.

115.   Defendant also has injured and continues to injure Class members by invading and denying them their right to control the commercial use of their names and personas, which is a substantive right long recognized at common law and more recently codified in California's right of publicity statute.

116.   Defendant has injured and continues to injure Class members' dignity and mental well-being by using their names and personas to promote a product they never agreed to promote.

117.   **Adequacy.** The proposed class representative will fairly and adequately represent the proposed Class. Plaintiff's claims are co-extensive with those of the rest of the Class. Plaintiff is represented by qualified counsel experienced in class action litigation of this nature.

118.   **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of these claims because individual joinder of the claims of all members of the proposed Class is impracticable. Many members of the Class do not have the financial resources necessary to pursue this claim, and even if they did, the size of their interest in the case may not be large enough to merit the cost of pursuing the case. Individual litigation of these claims would be unduly burdensome on the courts in which individualized cases would proceed. Individual litigation would greatly increase the time and expense needed to resolve a dispute concerning Defendant's common actions towards an entire group. Class action procedures allow for the benefits of unitary adjudication, economy of scale, and comprehensive supervision of the controversy by a single court.

119.   The proposed class action may be certified pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure. Defendant has acted on grounds generally applicable to the proposed Class, such that final injunctive and declaratory relief is appropriate with respect to the Class as a whole.

120.   The proposed class action may be certified pursuant to Rule 23(b)(3). Questions of law and fact common to Class members predominate over questions affecting individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

### FIRST CAUSE OF ACTION

### California Right of Publicity Statute, Cal. Civ. Code § 3344

121.    Plaintiff incorporates by reference the allegations in all preceding paragraphs of this Complaint.

122.    California's right of publicity statute prohibits the "knowing[] use[] of another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent." Cal. Civ. Code § 3344.

123.    By engaging in the foregoing acts and omissions, Defendant used and uses Plaintiff's and Class members' names, personal information, personas, and identities to advertise and sell subscriptions without prior consent.

124.    Plaintiff's and Class members' names and personas have commercial value, as demonstrated by Defendant's commercial use; similar commercial use by Defendant's competitors, including competitive people search websites like Spokeo and Intelius; and Defendant's payment of licensing fees to data brokers in exchange for the right to make commercial use of names and personas.

125.    Each use of Plaintiff's or a Class members' name and personal information in a teaser profile is a separate and distinct violation of Cal. Civ. Code § 3344.

126.    Cal. Civ. Code § 3344 provides that a person who violates the statute is liable "in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages," in addition to "any profits from the unauthorized use." The statute also provides for "[p]unitive damages" and "attorney's fees and costs."

127.    As a result of Defendant's violation of Cal. Civ. Code § 3344, Plaintiff and the Class members have suffered injury, and will imminently suffer further injury.

128.    Defendant has injured and continues to injure Class members by misappropriating their intellectual property without compensation. Class members have suffered, and will continue to suffer, monetary harm in the amount they should have been paid as reasonable royalties in exchange for the commercial use of their names and personas. Class members have also suffered,

and will continue to suffer, monetary harm in the amount of Defendant's unjust enrichment through its illegal use of their names and personas.

129.   Defendant has injured and continues to injure Class members' by invading and denying them their right to control the commercial use of their names and personas, which is a substantive right long recognized at common law and more recently codified in California's right of publicity statute.

130.   Defendant has injured and continues to injure Class members' dignity and mental well-being by using their names and personas to promote a product they never agreed to promote.

131.   Plaintiff, on behalf of the Class, seeks: statutory damages of $750 for each published searchable teaser profile about a Class member, or an alternative measure to be determined at a later stage of this litigation; actual damages, including Defendant's unjustly earned profits from its unauthorized use, and the amount that should have been paid in reasonable royalties to Plaintiff and the Class in exchange for the commercial use of their names and personas; punitive damages; nominal damages; the award of attorneys' fees and costs; the entry of an injunction prohibiting Defendant's illegal conduct; and declaratory relief.

132.   As described above, Defendant violated and continues to violate California's right of publicity statute by purporting to bar Plaintiff and his counsel from accessing Plaintiff's own name and personal information on Defendant's publicly available website.

133.   Accordingly, Plaintiff seeks an injunction ordering Defendant: (1) to expressly permit Plaintiff and counsel to access www.information.com for the purpose of investigating Plaintiff's claims and the claims of the Class he seeks to represent; (2) to withdraw its threat of retaliatory litigation against Plaintiff and his counsel; and (3) to pay attorneys' fees and costs incurred in researching the law and arguments necessary to respond to Defendant's illegal retaliatory threat.

**SECOND CAUSE OF ACTION**

**California Tort of Misappropriation of a Name or Likeness**

134.   Plaintiff incorporates by reference the allegations in all preceding paragraphs of this Complaint.

135.    California common law recognizes the tort of "appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Eastwood v. Superior Court*, 149 Cal.App.3d 409, 416 (Cal. Ct. App. 1983).

136.    By engaging in the forgoing acts and omissions, Defendant (1) used the names, personal information, and identities of Plaintiff and the Class in advertisements for subscriptions; (2) appropriated Plaintiff's and Class Members' names and likenesses to Defendant's commercial advantage; (3) failed to obtain Plaintiff's and Class members' consent; and (4) injured Plaintiff's and Class Members' by causing harms both economic and dignitary. *See Eastwood*, at 417.

137.    Plaintiff, on behalf of the Class, seeks monetary recovery in the amount of the commercial advantage Defendant derived from its misuse, compensatory damages for Defendant's failure to pay royalties owed, and the entry of an injunction prohibiting Defendant's tortious acts.

138.    As described above, Defendant violated and continues to violate California's misappropriation tort by purporting to bar Plaintiff and his counsel from accessing Plaintiff's own name and personal information on Defendant's publicly available website.

139.    Accordingly, Plaintiff seeks an injunction ordering Defendant: (1) to expressly permit Plaintiff and counsel to access www.information.com for the purpose of investigating Plaintiff's claims and the claims of the Class he seeks to represent; (2) to withdraw its threat of retaliatory litigation against Plaintiff and his counsel; and (3) to pay attorneys' fees and costs incurred in researching the law and arguments necessary to respond to Defendant's illegal retaliatory threat.

## THIRD CAUSE OF ACTION

**California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.***

140.    Plaintiff incorporates by reference the allegations in all preceding paragraphs of this Complaint.

141.    Defendant has and is engaged in unfair competition, as that term is defined in the California Unfair Competition Law, Cal. Bus. & Prof. Code. § 17200 et seq. ("UCL").

142.    As described in this Complaint, Defendant's misappropriation and use without prior consent of Plaintiff's and Class members' names, personal information, personas, and identities is a violation of California's Right of Publicity statute, Cal. Civ. Code § 3344 and California common law prohibiting misappropriation of a name or likeness.

143.    By engaging in the conduct described in this complaint and violating California law, Defendant engaged in and continues to engage in "unlawful" business acts and practices prohibited by the UCL.

144.    By engaging in the conduct described in this Complaint, including profiting from the sale and use in advertising of personal information it misappropriated without consent, Defendant engaged in and continues to engage in "unfair" business acts and practices prohibited by the UCL.

145.    As a result of Defendant's actions, Plaintiff and Class Members have been injured and have lost money and property. Plaintiff and Class members were denied the fair economic value of their names and personas. Defendant should have paid them and failed to do so. They are entitled to restitution, declaratory relief and injunctive relief.

## PRAYER FOR RELIEF

146.    WHEREFORE Plaintiff, individually and on behalf of the proposed Class, requests the following relief:

a.  An order certifying the proposed Class and appointing Plaintiff and his counsel to represent the Class;

b.  A declaration that Defendant's acts and omissions constitute a knowing and willful misappropriation of names, personal information, and personas, and infringe on protected intellectual property and dignitary rights, in violation of California statutory and common law;

c.  Statutory damages in the amount of $750 for each published searchable teaser profile about a Class member, or an alternative measure to be determined at a later stage of this litigation;

d.  Nominal damages in recognition of Defendant's ongoing violation of the

legally protected property and dignitary rights of Plaintiff and the Class members;

e. Preliminary and permanent injunctive relief enjoining Defendant from continuing to operate www.information.com without appropriate safeguards to ensure Class member's names and personas are not used to advertise without their consent;

f. Restitution to Plaintiff and Class members of the money Defendant unjustly earned through subscription sales made by misappropriating their names and personas;

g. Damages for actual harm; profits earned by Defendant; and reasonable royalties owned to Plaintiff and the Class;

h. The award of reasonable attorneys' fees and costs incurred by Plaintiff and the Class;

i. An injunction ordering Defendant to allow Plaintiff and his counsel to access www.information.com to investigate this lawsuit, without sacrificing the right to pursue this class action and without the threat of retaliatory litigation; and

j. Orders granting such other and further relief as this Court deems appropriate.

**JURY TRIAL DEMAND**

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

Dated: March 19, 2024

By: */s/ Andrew G. Gunem*
    Andrew G. Gunem (SBN 354042)
    andrewg@turkestrauss.com
    Samuel J. Strauss*
    sam@turkestrauss.com
    Raina C. Borrelli*
    raina@turkestrauss.com
    TURKE & STRAUSS LLP
    613 Williamson Street, Suite 201
    Madison, Wisconsin 53703
    Telephone: (608) 237-1775
    Facsimile: (608) 509-4423

Benjamin R. Osborn*
LAW OFFICE OF BENJAMIN OSBORN
63 Fiddlers Elbow Rd.
Margaretville, NY
Telephone: (347) 645-0464
Email: ben@benosbornlaw.com

*Pro Hac Vice* forthcoming

*Attorneys for Plaintiff and the Proposed Class*