UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUGENE MANNACIO,<br><br>    Plaintiff,<br><br>v.<br><br>INFORMATION.COM LLC,<br><br>    Defendant. | Case No. 24-cv-01717-JSW<br><br>**ORDER DENYING MOTION TO DISMISS AND SETTING INITIAL CASE MANAGEMENT CONFERENCE**<br><br>Re: Dkt. Nos. 16, 29 |

Now before the Court for consideration is the motion to dismiss filed by Information.com LLC ("Defendant"). The Court has considered the parties' papers, relevant legal authority, and the record in this case.[1] For the reasons that follow, the Court DENIES Defendant's motion.

**BACKGROUND**

Eugene Mannacio ("Plaintiff") alleges Defendant owns and operates a website that is a "self-described 'People Search Engine.'" (Compl. ¶ 2.) "Defendant provides a variety of free search tools with which prospective subscribers may search for and locate an individual in whom they are interested." (*Id.*) Plaintiff alleges, on information and belief, that Defendant obtains the information available on its website by paying third-party data brokers. (*Id.* ¶¶ 7, 19.) Plaintiff has not used or visited Defendant's website. (*Id.* ¶¶ 11, 27.)

When a visitor to Defendant's website ("user") searches for an individual, Defendant publishes a "teaser profile" that includes "information sufficient to uniquely identify the searched-

---

[1] On August 23, 2024, Plaintiff filed a statement of recent authority: *Kis v. Cognism, Inc.*, No. 22-cv-5322-AMO, 2024 WL 3924553 (N.D. Cal. Aug. 23, 2024). Defendant moved for leave to file a supplemental brief responding to *Kis*. The Court can determine whether *Kis* is distinguishable on the facts or on the law without the aid of Defendant's supplemental brief. Accordingly, the Court DENIES the motion for leave to file.

1  for individual." (*Id.* ¶ 3.)  If a user wants to go beyond the teaser profile to obtain additional

2  information, they must pay to do so.  (*See, e.g., id.* ¶¶ 20, 31.)  Plaintiff alleges Defendant

3  knowingly uses the teaser profiles, including his own, to advertise and solicit subscriptions.[2]  (*Id.*

4  ¶¶ 4, 29-30, 38, 41, 67.)

5        According to Plaintiff, Defendant publicly displays at least two teaser profiles with his

6  information.  One of those screenshots is depicted below.  It includes Plaintiff's first and last

7  name, his city and state of residence, and proposes a "limited time offer" of a "special 5-day trial

8  pass" for $.99 that would permit a user to unlock "unlimited" additional reports.  (*Id.* ¶ 30.)



22        Plaintiff alleges, on information and belief, that third-parties have searched for him,

23  viewed his teaser profile, and subsequently subscribed to Defendant's website.[3]  (*See id.* ¶ 42, 50,

24  58, 66.)  Plaintiff did not give Defendant his consent to do so and would not have provided

---

[2]    Plaintiff describes four methods by which an individual can search a Defendant's website. (Compl. ¶¶ 35-66.)

[3]    The screenshot in this Order is the only screenshot that includes Plaintiff's name.  Plaintiff explains the reason for this in paragraphs 78-82 of the Complaint.

1  consent if Defendant asked for it.  (*Id.* ¶¶ 28, 30, 71.)  According to Plaintiff, Defendant's non-
2  consensual use of his name and other information "offends his dignity and disturbs his peace of
3  mind."  For a variety of reasons, Plaintiff "does not wish to have his name and persona used to
4  promote" Defendant's product.  (*Id.* ¶ 73; *see also id.* ¶ 76.)  He also alleges that he suffered
5  "monetary harm in the amount he should have been paid as a reasonable royalty in exchange for
6  the use of his persona."  (*Id.* ¶ 74.)  Defendant's conduct also left Plaintiff "worried and uncertain
7  about his inability to control how his name and personal are used."  (*Id.* ¶ 77.)

Based on these and other allegations that the Court will discuss as necessary, Plaintiff brings claims for violations of California's Right of Publicity Act, Civil Code section 3344 ("Section 3344"), common law misappropriation of his name and likeness, and violations of the unlawful and unfair prongs of California's Unfair Competition Law, Business and Professions Code section 17200, *et seq.* (the "UCL Claim).

## ANALYSIS

**A.    Applicable Legal Standards.**

Defendant moves to dismiss for lack of Article III standing under Federal Rule of Civil Procedure 12(b)(1).  *See Maya v. Centex*, 658 F.3d 1060, 1067 (9th Cir. 2011).  Where, as here, a defendant makes a facial attack on jurisdiction, the factual allegations of the complaint are taken as true and are construed in the light most favorable to a plaintiff.  *Fed'n of African Am. Contractors v. City of Oakland*, 96 F.3d 1204, 1207 (9th Cir. 1996).

Defendant also moves to dismiss for failure to state a claim under Rule 12(b)(6).  A court's inquiry under Rule 12(b)(6) "is limited to the allegations in the complaint, which are accepted as true and construed in the light most favorable to the plaintiff."  *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).  Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Pursuant to *Twombly*, a plaintiff cannot merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

If the allegations are insufficient to state a claim, a court should grant leave to amend unless amendment would be futile. *See, e.g., Reddy v. Litton Indus. Inc.*, 912 F.3d 291, 296 (9th Cir. 1990); *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc.*, 911 F.2d 242, 246-47 (9th Cir. 1990).

**B.      Plaintiff Alleges He Has Standing.**

As the party seeking to invoke the Court's jurisdiction, Plaintiff bears the burden of demonstrating that he has standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992). "The jurisdictional question of standing precedes, and does not require, analysis of the merits." *Equity Lifestyle Props., Inc. v. Cnty. of San Luis Obispo*, 548 F.3d 1184, 1189 n. 10 (9th Cir. 2008). The essential elements of Article III standing are: "(i) that [the plaintiff] suffered in injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 422 (2021) (citing *Lujan*, 504 U.S. at 560-61). "Where, as here, a case is at the pleading stage, Plaintiff must 'clearly ... allege facts demonstrating' each element." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).

Defendant argues Plaintiff fails to allege the first element of standing: concrete harm. In *TransUnion*, the Supreme Court held that to analyze whether a plaintiff alleges "concrete" harm, a court must consider "whether the alleged injury … has a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts": physical injury; monetary injury; or "certain intangible harms" such as "disclosure of private information, and intrusion upon seclusion[.]" *Id.* For example, in *TransUnion*, the plaintiffs alleged the defendant placed alerts on credit reports when an individual's name matched that of list of individuals the government deemed threats to national security. 594 U.S. at 419-20. That practice resulted in false positives. *Id.* The plaintiffs filed a class action on behalf of themselves and over 8,000 class members

4

1    alleging the defendant violated the Fair Credit Reporting Act ("FCRA") by failing to use
2    reasonable measures to ensure its reports were accurate. *Id.* at 420-21. The Supreme Court
3    analogized the plaintiff's claim to a defamation claim, which requires disclosure to show harm.
4    Because the defendant disclosed only a subset of the class members reports to third-parties, the
5    Court held that only those class members proved they had standing. *Id.* at 434.

     Defendant relies, in part, on *Ridgeway v. Spokeo, Inc.*, 697 F. Supp. 3d 979 (C.D. Cal.
7    2023). That case involved similar allegations to Plaintiff's allegations here, but the plaintiffs
8    alleged the defendant violated Alabama's Right to Privacy Act. *Id.* at 981-82, 984. The *Ridgeway*
9    court concluded the plaintiff lacked standing because the defendant could not have "used" or
10   "published" information contained in its database "until a user search[d] for an individual." *Id.* at
11   985. The Court finds Defendant's reliance on *Ridgeway* unpersuasive. That court relied heavily
12   on the reasoning in *TransUnion* but did not examine whether the harms associated with the
13   plaintiff's claims are the same type of harm caused by defamation. "Unlike an action for
14   defamation, the gist of the cause of action in a privacy case is not injury to the character or
15   reputation, but a direct wrong of a personal character resulting in injury to the feelings without
16   regard to any effect which the publication may have on the property, business, pecuniary interest,
17   or the standing of the individual in the community." *Miller v. Collectors Universe, Inc.*, 159 Cal.
18   App. 4th 988, 1002, (2008) (cleaned up); *see also Kellman v. Spokeo, Inc.*, No. 21-cv-8976-WHO,
19   2024 WL 2788418, at *6 (N.D. Cal. May 29, 2024) ("*Kellman II*") (quoting *Miller* and finding
20   *Ridgeway* unpersuasive).

21   In contrast, courts within this District have found that the type of harms Plaintiff alleges he
22   suffered as a result of Defendant's conduct are traditionally recognized at common law and found
23   them sufficiently concrete for standing purposes. *See, e.g., Kis*, 2024 WL 3924553, at *2-4;
24   *Kellman II*, 2024 WL 2788418, at *5-6; *Nolen v. PeopleConnect, Inc.*, No. 20-cv-09203-EMC,
25   2023 WL 4303645, at *2 (N.D. Cal. June 30, 2023); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877,
26   888-90 (N.D. Cal. 2022) ("*Kellman I*"); *but see Callahan v. Ancestry.com*, No. 20-cv-08347-LB,
27   2021 WL 783524, at *4-5 (N.D. Cal. Mar. 1, 2021) (finding plaintiffs failed to plead standing to
28   pursue claim under Section 3344). The Court finds the reasoning of these cases more persuasive

5

than the reasoning in *Ridgeway* and concludes Plaintiff has plausibly alleged he has standing under Article III.

### C.   Plaintiff Alleges Sufficient Facts to State His Misappropriation Claims.

The essential elements of Plaintiff's common law claim of misappropriation, are "(1) the defendant's use of the plaintiff's identity; (2) the appropriation of plaintiff's name or likeness to defendant's advantage, commercially or otherwise; (3) lack of consent; and (4) resulting injury." *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 416-17 (1983).

Section 3344 provides:

> Any person who knowingly uses another's name, voice, signature, photograph, or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable for any damages sustained by the person or persons injured as a result thereof.

In order to state his claim for violations of section 3344, Plaintiff must allege facts supporting each of the elements of his common law claim and "(1) a 'knowing' use; (2) for the purposes of advertising; and (3) a direct connection between the use and the commercial purpose." *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 692 (9th Cir. 1998); *see also Eastwood*, 149 Cal. App. 3d at 417-18; Cal. Civ. Code § 3344(e).

Defendant argues Plaintiff fails to allege that it used his identity for commercial purposes. The court in *Nolen* considered and rejected a similar argument, which it characterized as a "*de facto* requirement of third-party viewership for certain § 3344 claims[.]" 2023 WL 4303645, at *2. First, the court determined the defendant "published" plaintiff's name and image when it made its website publicly available. It reasoned that to hold otherwise would "be at odds with the single publication rule of claim accrual." *Id.* at *3-4. It also concluded that "to hold that images are only commercially used once they are actually seen by a consumer makes little practical sense." *Id.*, at *4. The defendant's "point" of using the plaintiff's image as bait was the chance that it would be seen by some viewers, some of whom would then subscribe to defendant's product. *Id.*

6

The *Nolen* court also analyzed the text and purpose of Section 3344, noting that the plain meaning of the term "use" was "to make use of, to convert to one's service, to avail one's self of, to employ." *Id.* (quoting *Use, Black's Law Dictionary* (Revised 4th ed. 1968)).  Using that definition, the court reasoned that, whether or not the defendant succeeded in its efforts, "the image was used for the purpose of increasing Defendant's sales." *Id.*  The court also reasoned that requiring third-party viewership would not serve Section 3344's purpose of remedying the harm to the plaintiff's peace of mind.  "The loss of agency and control over her image, not only the visual display, causes Plaintiff harm." *Id.*, at *5.  The court also found support for its interpretation of Section 3344 in decisions from other states with similar rights of publicity statutes that "unequivocally held that third-party viewership is not part of a right of publicity claim." *Id.*, at *5-6 (citing cases).

The Court finds *Nolen's* reasoning persuasive.  Here, Plaintiff alleges that his name and identifying information are accessible on Defendant's website and alleges his teaser profile offers a trial subscription that gives users access to *all* of Defendant's website – not just to his own information.[4]  The Court concludes Plaintiff's allegations are sufficient to state claims under common law and under Section 3344.[5]

### D. Plaintiff Alleges Sufficient Facts to State His UCL Claim.

Because the Court concludes Plaintiff states a claim under Section 3344, he has stated a claim under the unlawful prong of the UCL. *Ingels v. Westwood One Broadcasting Services, Inc.*, 129 Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot be liable under § 17200 for committing 'unlawful business practices' without having violated another law.") (cleaned up).

Defendant also argues Plaintiff fails to state a claim under the unfair prong because he does

---

[4] The screen shot does not clearly state a user would obtain access to the entire database, but Plaintiff alleges that is the case. (Compl. ¶ 30(b).)  The Court accepts those allegations as true for purposes of resolving the motion.

[5] In addition, although the Court agrees with the *Nolen* court that it was not necessary, as discussed in Court's standing analysis, Plaintiff does allege third-parties searched for his image and, thereafter, subscribed to Defendant's website. *See Nolen*, 2023 WL 4303645 at *9-10 (concluding that although it was unnecessary, the plaintiff did allege facts to show third parties searched for and viewed her image and, thereafter, purchased defendant's product).

not allege Defendant commercially used his name and information. For the reasons set forth above, the Court finds that argument unpersuasive. Accordingly, the Court concludes Plaintiff alleges sufficient facts to state his UCL claim.

## CONCLUSION

For the foregoing reasons, the Court DENIES Defendant's motion to dismiss. Defendant shall file an answer by no later than November 5, 2024. The parties shall appear for an initial case management conference on January 17, 2025 at 11:00 a.m. and shall file a joint case management conference statement by no later than January 10, 2025.

**IT IS SO ORDERED**.

Dated: October 22, 2024

_____
JEFFREY S. WHITE
United States District Judge